IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ARKANSAS
CIVIL DIVISION 2

ONE BANK & TRUST, N.A                                                    PLAINTIFF

v.                                    CASE NO. 35cv-17-48

CHICAGO TITLE INSURANCE                                      DEFENDANT
COMPANY f/k/a TICOR TITLE
INSURANCE COMPANY

## COMPLAINT

Plaintiff, ONE BANK & TRUST, N.A. ("One Bank"), through its attorneys, GILL RAGON OWEN, P.A., and for its Complaint against Chicago Title Insurance Company f/k/a Ticor Title Insurance Company ("Chicago"), states and alleges as follows:

### INTRODUCTION

1.      This is an action for breach of contract and violation of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, et seq. The issues in this action arise out of Defendant's failure to fulfill its obligations to Plaintiff pursuant to two valid title insurance policies Plaintiff purchased from Defendant.

2.      Namely, Defendant has failed to reimburse One Bank for damages arising from challenges to One Bank's right of access and lien priority on two properties in Jefferson County.

3.      These damages are covered by One Bank's policies and include attorneys' fees costs, and expenses incurred in furtherance of the resolution of these access and priority issues.

### PARTIES AND JURISDICTION

4.      One Bank is a national association that operates a bank under a national charter. Its principal place of business is in Little Rock, Pulaski County, Arkansas.

5.      Defendant Chicago is a Nebraska corporation doing business in Arkansas.



FILED IN MY OFFICE AND SUMMONS
ISSUED AT *12:49* O'CLOCK *P* M
_____ *1-25-17* _____ DATE
LAFAYETTE WOODS, SR., CLERK
_Shawn Lewis_ DC

EXHIBIT

A

6.      The property that is the subject matter of this action is located in Jefferson County.

7.      This Court has jurisdiction over the parties and subject matter of this action pursuant to Ark. Code Ann. § 16-13-201.

8.      Venue is proper with this Court pursuant to Ark. Code Ann. § 16-60-101.

## FACTS

9.      The subject matter of this action centers on two title insurance policies purchased by One Bank from Chicago in conjunction with the issuance of two loans on two related properties located in Jefferson County, Arkansas.

10.      One loan and policy concerns a property comprised of three tracts totaling 39.45 acres (the "Roberson Property").

11.      The other loan and policy concerns an adjacent 10 acre tract (the "Barnes Property").

12.      One Bank owns the Barnes Property and has a properly perfected secured mortgage on the Roberson Property.

13.      Title to the Barnes Property and Roberson Property were once united, and together the two properties form a 49.45-acre block of land.

14.      As described below, throughout the extensive litigation regarding the Barnes Property and Roberson Property, various issues regarding access and lien-priority have arisen.

15.      These are issues covered by One Bank's insurance policies. However, Defendant has refused to fulfill its obligations thereunder.

16.      Because of Defendant's refusal, One Bank brings this action.

**A.    The Roberson Loan and Policy**

17.    On or about May 29, 2008, Donna Roberson executed and delivered to One Bank a promissory note (the "Roberson Note") in the initial principal amount of $170,400.00, and used part of the proceeds of the Roberson Note to pay the purchase price for 39 acres more or less, and to provide funds to enable Roberson to construct her home on the land. To secure payment thereon, Roberson acknowledged and delivered to One Bank a Mortgage dated May 29, 2008 (the "Roberson Mortgage"), which encumbered the property purchased. The Roberson Mortgage was recorded with the Jefferson County Circuit Clerk on June 25, 2008. A copy of the Roberson Mortgage is attached hereto as **Exhibit A.**

18.    In connection with this transaction, One Bank purchased from Chicago a title insurance policy numbered 74110-7623236 and dated June 25, 2008 (the "Roberson Policy"), insuring title to the land encumbered by the Roberson Mortgage. A copy of the Roberson Policy is attached hereto as **Exhibit B**.

19.    On or about September 16, 2008, Defendant or Defendant's agents discovered that the legal description of land encumbered that was initially attached to the Roberson Mortgage was incorrect. Namely, the initial description failed to include 29 acres of property that Roberson purchased with the proceeds of One Bank's loan, and was intended to be encumbered by the Roberson Mortgage.

20.    Despite the error in the Roberson Mortgage, the Roberson Policy covered 39.45 acres from its issuance.

21.    To remedy the error in the legal description, Defendant or Defendant's agents re-recorded the Roberson Mortgage with an amended legal description attached. The re-recording

3

was placed of record with the Jefferson County Circuit Clerk on September 16, 2008. A copy of the re-recording of the Roberson Mortgage is attached hereto as **Exhibit C**.

22.     The re-recording does not bear Donna Roberson's acknowledgement of the amended legal description even though it added the additional land to be encumbered by the Mortgage.

23.     On or about July 9, 2014, Defendant or Defendant's agents discovered that the legal description, as re-recorded, was still incorrect.

24.     In light of this discovery, Defendant or Defendant's agents filed or caused to be filed a Scrivener's Error Affidavit (the "Roberson Error Affidavit"), pursuant to which the erroneous legal description was once again amended—this time, to the correct legal description of the property originally encumbered by the Roberson Mortgage. The Roberson Error Affidavit was recorded with the Jefferson County Circuit Clerk on July 9, 2014. A copy of the Roberson Error Affidavit is attached hereto as **Exhibit D**.

25.     To reflect the amendment set forth in the Roberson Error Affidavit, the Roberson Mortgage was recorded a final time with the Jefferson County Circuit Clerk on July 9, 2014. A copy of this final recording is attached hereto as **Exhibit E**.

26.     In light of this final correction, Chicago executed and delivered to One Bank a Policy Correction (the "Roberson Policy Correction"), modifying the Roberson Policy's coverage to embrace the correct legal description of the Roberson Property. A copy of the Roberson Policy Correction is attached hereto as **Exhibit F**.

27.     One Bank timely paid all premiums due under the Roberson Policy.

4

**B.     The Barnes Loan and Policy**

28.     On or about May 29, 2008, Michael Barnes and Johanna Barnes (collectively, "Barneses") executed and delivered to One Bank a promissory note (the "Barnes Note") in the initial principal amount of $170,400. To secure payment thereon, the Barneses acknowledged and delivered to One Bank a Mortgage dated May 29, 2008 (the "Barnes Mortgage"), which granted and conveyed to One Bank a security interest in the property purchased. A copy of the Barnes Mortgage is attached hereto as **Exhibit G**.

29.     In connection with this transaction, One Bank purchased from Chicago a title insurance policy numbered 74341-76231831 and dated June 25, 2008 (the "Barnes Policy"), insuring title to the land encumbered by the Barnes Mortgage. A copy of the Barnes Policy is attached hereto as **Exhibit H**.

30.     On or about September 16, 2008, Defendant or Defendant's agents discovered that the legal description of land encumbered that was initially attached to the Barnes Mortgage was incorrect.

31.     In light of this discovery, Defendant or Defendant's agents filed or caused to be filed a Scrivener's Error Affidavit (the "Barnes Error Affidavit"), pursuant to which the erroneous legal description was amended to the correct legal description of the property originally encumbered by the Barnes Mortgage. The Barnes Error Affidavit was recorded with the Jefferson County Circuit Clerk on July 9, 2014. A copy of the Barnes Error Affidavit is attached hereto as **Exhibit I**.

32.     To reflect the amendment set forth in the Barnes.Error Affidavit, the Barnes Mortgage was recorded a final time with the Jefferson County Circuit Clerk on July 9, 2014. A copy of this final recording is attached hereto **Exhibit J**.

5

33.     In light of this final correction, Chicago executed and delivered to One Bank a Policy Correction/Addendum (the "Barnes Policy Correction"), modifying the Barnes Policy's coverage to embrace the correct legal description of the Barnes Property. A copy of the Barnes Policy Correction is attached hereto as **Exhibit K**.

34.     One Bank timely paid all premiums due under the Barnes Policy.

**C.     Foreclosure of the Barnes Property and Prevention of Access Thereto**

35.     On February 12, 2015, One Bank filed its Complaint for Foreclosure and Judgment against the Barneses, thereby commencing Jefferson County Circuit Court Case No. 35CV-15-60 (the "Barnes Foreclosure").

36.     On July 23, 2015, One Bank acquired legal title to the Barnes Property by Commissioner's Deed executed pursuant to a Foreclosure Decree and Report of sale entered in the Barnes Foreclosure.

37.     The only method of access to the Barnes Property is a gravel road running over the Roberson Property.

38.     After One Bank acquired the Barnes Property, various individuals came forward claiming that the gravel road was a private road, and was either owned or controlled by the various individuals.

39.     In fact, there is no express easement serving the Barnes Property over the gravel road of record, even though the gravel road has been continuously used to access the Barnes Property since at least 2008, and the Barnes Property cannot be accessed otherwise.

40.     Based on these allegations, and the fact that the gravel road is private, the individuals barred One Bank's access to the Barnes Property.

6

41.     On November 9, 2015, pursuant to a writ of assistance filed in the Barnes Case, the Jefferson County Sheriff delivered possession of the Barnes Property to One Bank, whereupon One Bank's agents changed the locks.

42.     However, after the Sheriff's office had discharged its duty pursuant to the writ of assistance, the individuals continued to bar One Bank's access to the Barnes Property and to make threats of violence directed towards anyone One Bank might send to the Barnes Property.

**D.     Foreclosure of the Roberson Property**

43.     On October 8, 2015, One Bank filed its Complaint for Foreclosure and Judgment against Donna Roberson, seeking to foreclose on the Roberson Property and commencing Jefferson County Circuit Court Case No. 35cv-15-567 (the "Roberson Case").

44.     Once it became clear that other individuals were claiming ownership of portions of the Roberson Property and ownership and control over the gravel road, One Bank filed its First Amendment to its Complaint for Foreclosure and Judgment in the Roberson Case, adding additional causes of action seeking to quiet title in an access easement over the gravel road to the Barnes Property and for injunctive relief related thereto.

45.     The First Amendment named several additional defendants, mostly comprised of the individuals who had identified themselves as interested parties by claiming to have received an interest in a portion of the Roberson Property through deeds from Donna Roberson.

46.     These individuals included Jeffell Elliott, Andrew Lacey, and Rosalind Parys-Christopher.

47.     One Bank also named Vanderbilt Mortgage & Finance, Inc. ("Vanderbilt"), who claimed to have first-priority mortgages on property claimed by Elliot and Parys-Christopher.

48.     Upon the filing of the First Amendment, One Bank's right of access to the Barnes Property and the priority of One Bank's mortgage lien over the Roberson Property had been clearly challenged and were put in issue before the Court.

49.     If it were not for Defendant's and/or Defendant's agents' multiple errors with regard to the legal descriptions attached to the Roberson Mortgage and Barnes Mortgage, these challenges would not have been possible, as subsequent grantees of Roberson would not be able to use the error to attempt to legitimize their claims.

## E.     **Donna Roberson's Bankruptcy**

50.     On December 7, 2015, Donna Roberson filed a Chapter 13 Voluntary Petition, commencing U.S. Bankruptcy Court for the Eastern District of Arkansas Case No. 5:15-bk-16155 (the "Roberson Bankruptcy").

51.     In her petition, Donna Roberson identified One Bank as a creditor. However, Roberson indicated that her debt to One Bank was only secured by 4.6 acres of the Roberson Property and a house thereon, instead of the full 39.45 acres.

52.     One Bank objected to the Roberson Bankruptcy and moved to dismiss it based on allegations that it was filed in bad faith in an effort to stall proceedings in the Roberson Case. *See* Roberson Bankruptcy, Doc. # 13. One Bank also moved, in the alternative, that the Bankruptcy Court grant it relief from the automatic stay and abandonment so that it could pursue its foreclosure and access claims in the state-court Roberson Case. *Id.*

53.     Roberson responded to One Bank's motion with the assertion that the extent of One Bank's lien "has yet to be determined due to potential errors in the land description." Roberson Bankruptcy, Doc. # 25.

8

54.     Roberson further asserted that while "a Scrivener's Error Affidavit and subsequent altered mortgages were filed," Roberson was without sufficient knowledge to admit or deny the accuracy of the documents. *Id.*

55.     One Bank's motions were resolved via an Agreed Order entered by the Bankruptcy Court on March 21, 2016. Roberson Bankruptcy, Doc. # 36.

56.     Therein, the Bankruptcy Court determined, inter alia:

   a. "One Bank holds a properly perfected secured mortgage on approximately 40 acres [the Roberson Property."

   b. "[Roberson] grants One Bank an immediate, continuous and permanent access easement to the Barnes Property via the Gravel Road," and "Debtor agrees to direct all other property owners adjacent to the Gravel Road to allow One Bank access to the best of her abilities."

57.     Pursuant to the Agreed Order, One Bank agreed to dismiss its motions on the conditions that:

   a. Roberson pay One Bank its regular monthly payment plus adequate protection to cure arrearages.

   b. Roberson amend her bankruptcy schedule to recognize One Bank's mortgage as encumbering the entire Roberson Property; and

   c. Roberson grants One Bank a permanent access easement to the Barnes Property via the gravel road.

58.     The Roberson Bankruptcy remains open. However, if Roberson should fail to make her payments in a timely manner, One Bank is entitled to automatic relief from stay and may proceed to foreclose upon the Roberson Property.

59.     If it were not for Defendant's and/or Defendant's agents' multiple errors with regard to the legal descriptions attached to the Roberson Mortgage, Roberson and those claiming through her would not have been able to assert these defenses.

9

**F.     Jeffell Elliott's Bankruptcy**

60.     On August 21, 2015, Jeffell Elliott filed a Chapter 13 Voluntary Petition, commencing U.S. Bankruptcy Court for the Eastern District of Arkansas Case No. 5:15-bk-14150 (the "Elliott Bankruptcy").

61.     At the time One Bank added Jeffell Elliott as a defendant in the Roberson Case, it was unaware of the Elliott Bankruptcy.

62.     After being made aware of the Elliott Bankruptcy, on January 20, 2016, One Bank filed a motion asserting that it had a first-priority lien on the portion of the Roberson Property Elliott claimed (the "Elliott Parcel"), and seeking abandonment and relief from stay so that One Bank could pursue foreclosure in the Roberson Case. In addition, One Bank's motion sought to have the Bankruptcy Court direct Jeffell Elliott to allow One Bank access to the Barnes Property. Elliott Bankruptcy, Doc. #54.

63.     On February 5, 2016, Elliott responded to One Bank's Motion by asserting that One Bank had no lien on Elliott Parcel. Elliott Bankruptcy, Doc. #65.

64.     On February 4, 2016, Vanderbilt objected to One Bank's Motion on the basis that One Bank filed its motion to foreclose on Vanderbilt's collateral and Elliott's homestead, again raising the issue of the priority of One Bank's lien. Elliott Bankruptcy, Doc. #63.

65.     On July 21, 2016, after a hearing on One Bank's Motion, the Bankruptcy Court granted One Bank's Motion in part, and denied it in part.

66.     In so doing, the Bankruptcy Court held:

      a.  One Bank shall have immediate relief from the automatic stay so that the parties may litigate in the Roberson Case issues pertaining to (1) an access easement and (2) lien priority; and

      b.  A survey would be performed on Roberson Property and Barnes Property.

10

67.    If it were not for Defendant's and/or Defendant's agent's multiple errors with regard to the legal descriptions attached to the Roberson Mortgage, the issue of loan priority would not have arisen, and One Bank would not have had to litigate the various issues related thereto in the Elliott Bankruptcy.

G.    **Post-Bankruptcy Litigation in the Roberson Case**

68.    On September 26, 2016, after the automatic stay of action against Roberson and Elliott had been lifted in their respective bankruptcies, One Bank filed its Second Amended and Substituted Complaint in the Roberson Case.

69.    This most recent amendment outlined the extensive procedural history of the issues involved and consolidated all open issues with regard to the Roberson Property and Barnes Property into one complaint by requesting (1) a decree establishing an easement for access to the Barnes Property, (2) a preliminary injunction granting immediate and continuous access to the Barnes Property, (3) declaratory judgment establishing One Bank's lien on the Roberson Property as being first priority, and (4) foreclosure.

70.    On October 26, 2016, Jeffell Elliott, Andrew Lacy, Donna Roberson and Rosalind Parys-Christopher filed a joint Answer to One Bank's Second Amended Complaint.

71.    Therein, the defendants raise various defenses dealing with the priority of One Bank's lien and the extent of the Roberson Property the lien actually encumbers.

72.    In doing so, the defendants specifically attack the Roberson Error Affidavit, filed by Defendant or Defendant's agents, claiming it was "filed without consent or knowledge of Roberson to cover land that was not originally intended to be mortgaged. . . ."

73.     The defendants also specifically assert that the September 16, 2008, re-recording of the Roberson Mortgage recorded by Defendant or Defendant's agents "was not actually a correction, but a land grab. . . ."

74.     On October 27, 2016, Vanderbilt filed its Answer, denying the priority of One Bank's lien affirmatively requesting the Court to determine the priority of the liens involved in the case.

75.     If it were not for Defendant's and/or Defendant's agent's multiple errors with regard to the legal descriptions attached to the Roberson Mortgage, a large portion of the Roberson Case would have been unnecessary.

76.     Without these mistakes, One Bank's claim would be much less complicated, as the Roberson Case would have only been a matter of proof for foreclosure and the establishment of an easement. Instead, Defendant's and/or Defendant's agents' errors allowed Roberson, Elliott and Vanderbilt to challenge the priority of One Bank's lien, and, with these defenses, the litigation surrounding the Roberson Property and Barnes Property became significantly more complex.

**H.    Key provisions of the Barnes Policy**

77.     Schedule B to the Barnes Policy specifically states that Chicago "hereby insures the insured in accordance with and subject to the terms, exclusions and conditions set forth in the American Land Title Association Loan Policy (6-17-06). . . ."

78.     A copy of the American Land Title Association Loan Policy (6-17-06) ("ALTA Policy") is included as part the Barnes Policy attached hereto as Exhibit H.

79.     The ALTA Policy, as incorporated into the Barnes Policy, specifically provides that Chicago insures against loss or damage incurred from:

a. "[A] document affecting Title not properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered." ALTA Policy, Covered Risks § 2(a)(iii).

b. "Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land." ALTA Policy, Covered Risks § 2(c).

c. "Unmarketable Title." ALTA Policy, Covered Risks § 3.

d. "No right of access to and from the Land." ALTA Policy, Covered Risks § 4.

e. "The invalidity or unenforceability of the lien of the Insured Mortgage upon the Title," including loss from impairments arising from "the Insured Mortgage not being properly created, executed, witnessed, sealed, acknowledged, notarized, or delivered. ALTA Policy, Covered Risks § 9(c).

80.     The ALTA Policy, as incorporated into the Barnes Policy, further provides that Chicago "will also pay the costs, attorneys' fees, and expenses incurred in defense of any matter insured against by this Policy, but only to the extent provided in the Conditions." ALTA Policy, Covered Risks § 14.

**I.      Key provisions of the Roberson Policy**

81.     The Roberson Policy provides that Chicago will insure against loss or damage incurred from:

a. "Any defect in or lien or encumbrance on the title."

b. "Unmarketability of the title."

c. "Lack of a right of access to and from the land."

d. The invalidity or unenforceability of the lien of the insured mortgage upon the title."

e. "The priority of any lien or encumbrance over the lien of the insured mortgage."

82.     The Roberson Policy further provides that Chicago "will also pay the costs, attorneys' fees and expenses incurred in defense of the title or the lien of the insured mortgage, as insured, but only to the extent provided in the Conditions and Stipulations.

**J.    One Bank's Claims and Chicago's Action in Relation Thereto**

83.     On or about January 28, 2016, One Bank submitted claims on both the Roberson Policy and the Barnes Policy via Chicago's online claim submittal portal.

84.     Through its claims, One Bank advised Chicago of the procedural background of the Roberson Case, described the issues pertaining to access, and advised Chicago of the Roberson Bankruptcy and Elliott Bankruptcy, in which the issues pertaining to priority of One Bank's lien had been raised.

85.     On March 24, 2016 Chicago accepted coverage of One Bank's claims. It confirmed acceptance and coverage through two letters (the "Roberson Confirmation" and the "Barnes Confirmation"). Copies of the Roberson Confirmation and the Barnes Confirmation are attached hereto as **Exhibit L** and **Exhibit M**, respectively.

86.     In the Barnes Confirmation, Chicago admits that the issue of access to the Barnes Property "is a covered matter subject to the terms and provision of the [Barnes] Policy."

87.     In the Roberson Confirmation, in addition to admitting that the issue of access is covered, Chicago also acknowledges a "challenge by [Roberson] to the legal description encumbered by the Insured Mortgage," and a "challenge to the priority of the Insured Mortgage on the parcels conveyed by [Roberson] to third parties. . . ."

88.     After acceptance of One Bank's claims, Chicago assigned independently-engaged attorneys to address One Bank's claims. These attorneys have taken an extremely limited role in

14

the matters described herein and have attended, but have had no participation, in the litigation pertaining to these matters.

89.     On several occasions, counsel for One Bank has offered to allow Chicago's attorneys to pursue resolution of these issues. However, on each occasion, Chicago determined that the underlying facts and filings were too complicated for a new set of attorneys to take over.

90.     Consequently, Chicago determined that its attorneys would provide assistance to One Bank's counsel, but that One Bank's counsel would maintain its primary role in litigation.

91.     Since One Bank made its claims, One Bank has paid its counsel to continue to pursue resolution of the access and priority issues.

92.     Chicago knew One Bank was paying its counsel to do so, and did not object.

93.     Since One Bank made its claims, its counsel has taken a primary role in the following:

> a.   Hearing on One Bank's Motion for Abandonment and Relief from Stay in the Elliott Bankruptcy. Chicago's attorney attended, but did not participate.
>
> b.   Hearing on One Bank's request for preliminary injunction (regarding access to the Barnes Property) in the Roberson Case.

94.     In addition, when it became clear that there was no legal description of the gravel road for the easement One Bank sought and that various new legal descriptions had become pertinent, One Bank ordered a survey of the Barnes Property and Roberson Property for $4,100 to facilitate resolution of the priority issues and to provide a legal description for the easement over the gravel road to which it is entitled. A copy of the invoice for the survey is attached hereto as **Exhibit N**.

95.     One Bank paid this invoice, but, despite demand to Chicago, has not been reimbursed for the cost of the survey.

15

96.     Every issue that has arisen with regard to the Barnes Property and/or Roberson Property has stemmed from the incorrect legal description on the initial recording of the Roberson Mortgage—a document affecting Title that was not properly created—and/or the lack of access to the Barnes Property.

97.     Both of these issues are covered under the Barnes Policy and Roberson Policy.

98.     On November 21, 2016, One Bank made demand for payment of its attorneys' fees, costs and expenses for prosecution of these issues and for reimbursement for the survey. A copy of One Bank's demand is attached hereto as **Exhibit O**.

99.     On December 7, 2016, One Bank restated these demands. A copy of One Bank's restated demand is attached hereto as **Exhibit P**.

100.    On December 20, 2016, via two separate letters, Chicago denied One Bank's demands. Copies of Chicago's denial letters are attached hereto as **Exhibit Q** and **Exhibit R**.

101.    One Bank paid all required premiums and has met conditions obligations of the Barnes Policy and Roberson Policy, including obligation to cooperate with Chicago.

102.    Nevertheless, despite owning two insurance policies that provide for payment of attorney's fees incurred as a result of the issues described herein, One Bank has not received the benefit of those provisions.

103.    Instead, Chicago has only provided minimal assistance to One Bank's attorneys in these matters, and refused to reimburse it for the damages it has incurred as a result of covered issues.

## COUNT I
## BREACH OF CONTRACT: FAILURE TO REIMBURSE FOR SURVEY

104.    One Bank re-alleges and incorporates all allegations otherwise set forth herein.

105.    The Barnes Policy specifically requires Chicago to reimburse One Bank for costs, damages or loss arising from "[n]o right of access to and from the Land."

106.    The Barnes Policy also requires Chicago to reimburse One Bank for costs, damages or loss arising from an unmarketable title.

107.    The survey One Bank ordered, and subsequently paid for, was and is necessary for the resolution of the access issues described herein.

108.    One Bank's title to the Barnes Property is not marketable without full resolution of the access issues describe herein.

109.    The cost of the survey constitutes a damage or loss arising from One Bank having no right of access to the Barnes Property.

110.    Therefore, Chicago is obligated to reimburse One Bank for the survey's cost.

111.    In addition, both the Barnes Policy and the Roberson Policy obligate Chicago to reimburse One Bank for costs, damages or loss arising problems with One Bank's lien.

112.    The survey was and is necessary for the resolution of the issues regarding the priority of One Bank's lien, and so the cost of the survey constitutes a damage or loss arising from problems with One Bank's lien on the Roberson Property.

113.    Therefore, Chicago is obligated to reimburse One Bank for the survey's cost.

114.    One Bank performed its obligations under both the Barnes Policy and the Roberson Policy.

115.    As described herein, Chicago has refused to reimburse One Bank for damages, costs, attorneys' fees and expenses arising from the foregoing, despite demand.

116.    Chicago's refusal constitutes breaches of both the Barnes Policy and the Roberson Policy.

117.    As a result of Chicago's breaches, One Bank has suffered damages in the amount of $4,100.

118.    In addition to the amount of the loss, One Bank is entitled to twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorneys' fees for the prosecution and collection of the loss pursuant to Ark. Code Ann. § 23-79-208. One Bank is also entitled to its attorneys' fees pursuant to Ark. Code Ann. § 16-22-308

## COUNT II
## BREACH OF CONTRACT: FAILURE TO REIMBURSE FOR DAMAGES INCURRED AS A RESULT OF A LACK OF ACCESS TO THE BARNES PROPERTY

119.    One Bank re-alleges and incorporates all allegations otherwise set forth herein.

120.    The Barnes Policy specifically requires Chicago to reimburse One Bank for damages, costs, attorneys' fees and expenses arising from "[n]o right of access to and from the Land."

121.    The Barnes Policy also requires Chicago to reimburse One Bank for damages, costs, attorneys' fees and expenses arising from an unmarketable title.

122.    Because One Bank currently has no easement over which to access the Barnes Property, One Bank cannot market the Barnes Property.

123.    One Bank performed its obligations under the Barnes Policy.

124.    As described herein, Chicago has refused to reimburse One Bank for damages, costs, attorneys' fees and expenses arising from the foregoing, despite demand.

125.    Chicago's refusal constitutes breaches of the Barnes Policy.

126.    One Bank has been damaged and has incurred costs, attorneys' fees, and expenses arising from an unmarketable title to the Barnes Property and arising from a lack of access to the Barnes Property in an amount to be determined at trial.

127.   In addition to the amount of the loss, One Bank is entitled to twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorneys' fees for the prosecution and collection of the loss pursuant to Ark. Code Ann. § 23-79-208. One Bank is also entitled to its attorneys' fees pursuant to Ark. Code Ann. § 16-22-308

### COUNT III
### BREACH OF CONTRACT: FAILURE TO REIMBURSE FOR LEGAL EXPENSES INCURRED AS A RESULT OF LIEN-PRIORITY ISSUES

128.   One Bank re-alleges and incorporates all allegations otherwise set forth herein.

129.   The Roberson Policy provides that Chicago will reimburse One Bank for damages, costs, attorneys' fees and expenses incurred from:

     a.   "Any defect in or lien or encumbrance on the title."

     b.   The invalidity or unenforceability of the lien of the insured mortgage upon the title."

     c.   "The priority of any lien or encumbrance over the lien of the insured mortgage."

130.   One Bank performed its obligations under the Barnes Policy.

131.   As described herein, Chicago has refused to reimburse One Bank for damages, costs, attorneys' fees and expenses arising from the foregoing, despite demand.

132.   Chicago's refusal constitutes breaches of the Roberson Policy.

133.   One Bank has been damaged and has incurred costs, attorneys' fees, and expenses arising from potential defects in its title, potential invalidity or enforceability of its lien, and the priority of its lien on the Roberson Property in an amount to be determined at trial.

134.   In addition to the amount of the loss, One Bank is entitled to twelve percent (12%) damages upon the amount of the loss, together with all reasonable attorneys' fees for the

prosecution and collection of the loss pursuant to Ark. Code Ann. § 23-79-208. One Bank is also entitled to its attorneys' fees pursuant to Ark. Code Ann. § 16-22-308

## COUNT IV
## DECEPTIVE TRADE PRACTICES

135.    One Bank re-alleges and incorporates all allegations otherwise set forth herein.

136.    Chicago's acts and omissions constitute violations of the Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101, et. seq. (the "Act").

137.    As set forth above, Chicago provided only minimal attorney assistance and representation for the resolution of issues Chicago knew were covered under the Barnes Policy and Roberson Policy.

138.    Instead of taking over litigation to resolve these covered issues, Chicago allowed One Bank to pay its own attorneys to do the necessary work, even going so far as to decline One Bank's offers to Chicago's attorneys to pursue resolution the covered issues based on the contention that the underlying facts and filings were too complicated for a new set of attorneys to take over.

139.    These acts constitute unconscionable, false, or deceptive acts and practices in business in violation of Ark. Code Ann. § 4-88-107(a)(10).

140.    One Bank has suffered actual damage and injury as a result of the offenses and violations of the Act described above.  Pursuant to Ark. Code Ann. § 4-88-113(f), One Bank is entitled to a judgment against Chicago for damages arising from the Chicago's violations of the Act in an amount to be determined at trial and for One Banks attorneys' fees.

141.    One Bank reserves the right to plead further as discovery progresses and more information becomes available.

WHEREFORE, Plaintiff, One Bank & Trust, N. A., prays for judgment against Defendant, Chicago Title Insurance Company f/k/a Ticor Title Insurance Company, for damages in an amount to be determined at trial; for an additional twelve percent (12%) damages upon the amount of its loss; for its attorney's fees and costs; for pre- and post-judgment interest; and for all other relief to which the Plaintiff may be entitled.

Respectfully submitted,

**ONE BANK & TRUST, N.A.**

by its attorneys:

GILL RAGON OWEN, P.A.
425 West Capitol Ave., Suite 3800
Little Rock, Arkansas 72201
Telephone:  (501) 376-3800
Facsimile:  (501) 372-3359
duke@gill-law.com
mcnulty@gill-law.com
heffington@gill-law.com

By: _____
    Wm. David Duke, Bar No. 79056
    Kelly W. McNulty, Bar No. 2005141
    Aaron M. Heffington, Bar No. 2013227
